This matter is before the court on appeal from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellants' parental rights, and granted permanent custody to the Lucas County Children Services Board ("LCCSB").
The facts of this case are as follows. Shauntina A. is the natural mother of Robert R., born July 27, 1991, Devin R., born April 29, 1993, and Elizabeth R., born October 5, 1994. William R. is the legal father of Robert and Devon and the alleged father of Elizabeth. On the date of the incident described below, Shauntina A. was living with her boyfriend and the three children. Their relationship had a history of domestic violence. William R. was living in North Carolina. He and Shauntina also had a history of domestic violence.
The incident which immediately preceded LCCSB's involvement occurred on October 6, 1997. On that date, Shauntina and her boyfriend were arguing and while Shauntina was carrying Elizabeth, he pushed her down. Later, Shauntina and her boyfriend, while seated in a pickup truck with the children between them, began to struggle and Robert and Devin's heads were bumped together. The couple sought medical treatment at a nearby hospital. The hospital notified the sheriff's office and they were both arrested. After her arrest, Shauntina placed the children with their maternal grandparents where they remained until November 25, 1997, when she removed them. During this time, Shauntina had been living with various friends and relatives.
On December 1, 1997, LCCSB filed a complaint in the trial court alleging that Robert R., Devin R. and Elizabeth R. were dependant and neglected children. The complaint further alleged that Shauntina had a substance abuse problem and that this, coupled with lack of suitable housing, established that an award of temporary custody to LCCSB was in the best interests of the children. The complaint also stated that William R. had not seen the children in ten months. At a shelter care hearing held on the same date, interim temporary custody was awarded to LCCSB.
The original case plan was filed on December 9, 1997. The goal of the plan was reunification of the children with Shauntina. William was required to take an active interest in his children, establish paternity (if appropriate) and pay child support. The plan also required that Shauntina be drug and alcohol free, that she maintain appropriate housing for her children, she not contact any adults with a history of domestic violence, and she address certain emotional problems. On January 22, 1998, the children's guardian ad litem filed a report in which she recommended that, inter alia, temporary custody remain with LCCSB, Shauntina complete an alcohol/drug treatment program and obtain more adequate housing, and William (who had moved to Lucas County from North Carolina) obtain employment, stable housing and counseling.
On March 5, 1998, the children were adjudicated dependent and neglected and temporary custody was awarded to LCCSB. On November 30, 1998, LCCSB filed a motion for permanent custody. In its motion, LCCSB stated that Shauntina had attended only five of her twenty counseling appointments and was living with her abusive boyfriend's parents. As to William, LCCSB noted that he did not have independent housing or regular income. Neither party had been paying child support.
On April 23, 1999, a dispositional hearing was held on the motion. The court heard the following relevant testimony. Carol McEwen, an employee of Substance Abuse Services, Incorporated ("SASI"), testified that she conducts drug and alcohol assessments for LCCSB. On June 19, 1998, she conducted a drug and alcohol assessment on Shauntina and stated that, based upon her alcohol and marijuana use, she referred her to the six-week intensive outpatient program which included drug screens and counseling. McEwen testified that she completed the program but that there were positive drug screens throughout the treatment. McEwen also testified that she conducted an assessment of William and that she did not recommend any services.
Lori Kaufman Rees, a counselor for Center for Solutions in Brief Therapy, testified that she separately met with both Shauntina and William. She stated that Shauntina's domestic violence incidents were linked to alcohol and that she was severely depressed. Rees testified that Shauntina missed several appointments, but acknowledged her problems and was very cooperative. She felt that Shauntina had made progress.
Rees stated that after meeting with William, she recommended additional counseling for depression. He too had difficulty keeping scheduled appointments. William seemed particularly depressed about not being able to get custody of his children. William recognized that he needed financial stability, secure housing and instruction regarding parenting skills.
The caseworker for LCCSB, Irena Pacheco, testified that the children were in foster care when she received the case. She stated that at that time, Shauntina was living in a motel with her boyfriend and William was living with friends. Pacheco stated that Shauntina's contact with LCCSB was sporadic and that it was often difficult to contact her. She testified that she had not successfully completed domestic violence counseling and that there has been at least once incident of domestic violence subsequent to LCCSB's involvement.
Pacheco testified that William had been consistent with his visitation of the children. While he was employed, William had money concerns, no stable housing and his car was not reliable.
Pacheco stated that it was her recommendation that LCCSB be granted permanent custody of the children with the goal of adoption. She based her recommendation on the fact that the problems which precipitated LCCSB's involvement still existed and the lack of consistency on the part of the parents to follow through with services.
In its judgment entry filed May 4, 1999, the trial court granted permanent custody of Robert, Devin and Elizabeth to LCCSB. As to William, the trial court stated:
 "* * * [T]he court finds that the father, William R[.], has demonstrated a lack of commitment toward the children by his unwillingness to provide an adequate permanent home for the children, and his unwillingness to follow through with case plan services. The court further finds that in July, 1998, Mr. Ralston ceased attending psychological counseling and exhibited signs of significant depression. He indicated to the counselor that he had `given up' on regaining custody of the children, and at that time, he ceased participating in counseling."
It is from that judgment that appellants appeal.
Appellants assert the following assignments of error:
 "The Lucas County Children Services Board did not examine all possible relative placement in order to secure relative placement."
 "The Lucas County Children Services Board was unable to prove clear and convincingly that the father was unable to take custody of his children."
In their first assignment of error, appellants argue that LCCSB failed, as required under R.C. 2151.412(G)(2), to transfer legal custody to a suitable relative. In particular, appellants argue that the children were removed from Shauntina's custody, placed with the maternal grandparents for a time, and then placed in foster care without consideration of relative placement including their father, William.
R.C. 2151.412(G)(2) provides that an abandoned, abused or neglected child should be placed in the legal custody of a suitable member of the child's extended family. If, however, no suitable family member exists, the child should be placed in the permanent custody of the public children services agency. R.C.2151.412(G)(5).
This court has consistently held that "the language of R.C.2151.412(G) is precatory, not mandatory. It does not require the court to favor a relative, rather than the children services agency, in granting custody." In re the Seven A. Children, (Sept. 22, 1995), Fulton App. No. F-95-002, unreported. The overriding concern is the best interests of the child. In re Taceia R. (Feb. 16, 1996), Lucas App. No. L-95-155, unreported. See In the matterof Gary M., Mary M. and Johnathon M. (May 22, 1998), Lucas App. No. L-96-210, unreported.
In the instant case, the LCCSB caseworker testified that the children were in foster care when she became involved in the case, but had also lived with their maternal grandparents. The guardian ad litem's report indicates that the grandparents were at one point very interested in temporary or possibly permanent custody of the children, but that their home was too small to accommodate them.
Regarding William, the record demonstrates that LCCSB did consider placement of the children with him. The caseworker testified:
 "A: * * * [W]e had numerous staffings discussing his potentially getting the kids back, and we bent over backwards and we asked on numerous occasions to find stable housing so that the kids — finish his counseling which he never did.
 "Q: So that's the only criteria that he had to meet to have the children returned?
"A: The counseling, yes, and stable housing."
Upon due consideration of the record, this court finds that the trial court's decision not to award custody of the children to a relative was not improper. Barring the precatory nature of R.C.2151.412(G), appellants have not shown that LCCSB failed to consider relative placement. Accordingly, appellants' first assignment of error is not well-taken.
Appellants next argue that LCCSB failed to prove by clear and convincing evidence that William was unable to care for his children. Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, 477.
R.C. 2151.414(B) provides that:
 "The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
"(2) The child is abandoned and the parents cannot be located;
 "(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody."
In determining the best interest of a child, the trial court shall consider all relevant factors including, but not limited to, the factors enumerated in R.C. 2151.414(D).[1] Additionally, the trial court must determine, by clear and convincing evidence, that one or more of the predicate conditions in R.C. 2151.414(E) exists, and, if so, the trial court shall enter a finding that the child or children cannot be placed with either parent within a reasonable time or should not be placed with either parent.
In the instant case, the trial court found that the facts established the predicate conditions under R.C. 2151.414(E)(1), (4) and (9). Such conditions provide:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent."
The court specifically found that: LCCSB made reasonable efforts to prevent the removal of the children, but that such efforts were unsuccessful; that the problems which caused the removal of the children had not been remedied; that both parents demonstrated a lack of commitment toward the children; and that both parents have demonstrated an unwillingness to provide stability or appropriate shelter for their children. Based upon these facts, the trial court determined that it was in the children's best interest that permanent custody be awarded to LCCSB.
Based upon the foregoing, and after careful review of the record in this case, we find that clear and convincing evidence exists to support the trial court's conclusion that it was in the best interests of Robert, Devin and Elizabeth to be placed in the custody of LCCSB and that the children cannot, or should not, be placed with appellants within a reasonable time.
Accordingly, appellants' second assignment of error is not well-taken.
On consideration whereof, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellants.
MARK L. PIETRYKOWSKI, J.
MELVIN L. RESNICK, J. AND PETER M. HANDWORK, J., CONCUR.
[1] These factors are:
"(1) The interaction and interrelationship of the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody to the agency."